**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| MARION P. HAMMER,<br><br>  Plaintiff/Counterclaim Defendant,<br><br>  v.<br><br>THE NATIONAL RIFLE ASSOCIATION OF AMERICA<br><br>  Defendant/Counterclaim Plaintiff. | Case No.: 1:25-cv-01557-PTG-LRV |

## ANSWER TO COMPLAINT, COUNTERCLAIM, AND JURY TRIAL DEMAND

Defendant, The National Rifle Association of America ("the NRA"), in the above-entitled matter, by counsel and pursuant Fed. R. Civ. P. 12(a)(4)(A), responds to Plaintiff Marion P. Hammer's ("Ms. Hammer") allegations in her Verified Complaint for Damages and Demand for Jury Trial (the "Complaint") [Dkt No. 1] and submits the following Answer and presentation of defenses as follows:

The NRA alleges that as to each and all of the allegations hereinafter denied for lack of sufficient information or belief, it has no information or belief on the subject or subjects included therein sufficient to enable it to answer the allegations or any of them; wherefore, the NRA denies each and all allegations and bases its denial thereof on that ground.

### Introduction

1.       The NRA can neither admit nor deny the statements set forth in Paragraph 1 of the Complaint because the statements are not allegations of fact but merely preliminary/introductory statements concerning the nature of the case and Ms. Hammer's involvement with the NRA to which no response is required.

1

2. The NRA can neither admit nor deny the statements set forth in Paragraph 2 of the Complaint because the statements are not allegations of fact but merely preliminary/introductory statements concerning the nature of the case and Ms. Hammer's involvement with the NRA to which no response is required. To the extent a response is required, the NRA denies the allegations, including any allegations of wrongdoing.

3. The NRA can neither admit nor deny the statements set forth in Paragraph 3 of the Complaint because the statements are not allegations of fact but merely preliminary/introductory statements concerning the nature of the case and alleged causes of action to which no response is required. To the extent a response is required, the NRA denies the allegations, including any allegations of wrongdoing.

4. The NRA can neither admit nor deny the statements set forth in Paragraph 4 of the Complaint because the statements are not allegations of fact but merely preliminary/introductory statements concerning the nature of the case to which no response is required. To the extent a response is required, the NRA denies the allegations, including any allegations of wrongdoing.

## Nature of the Actions

5. The NRA admits that Ms. Hammer purports to bring a claim for breach of contract identified in this Paragraph, but the NRA denies Ms. Hammer's allegations of breach, including any allegations of wrongdoing.

6. The NRA can neither admit nor deny the statements set forth in Paragraph 6 of the Complaint because the statements are not allegations of fact but merely preliminary/introductory statements concerning claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of

2

Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

## Jurisdiction

7.      The NRA admits that the Court has jurisdiction over Ms. Hammer's breach of contract claim.

8.      The NRA admits that Ms. Hammer is a natural born person who resides in Tallahassee, Florida.

9.      The NRA admits that it is a corporation organized under the laws of the State of New York and maintains its principal place of business in Fairfax, Virginia.

10.     The NRA admits that the Court has jurisdiction over Ms. Hammer's breach of contract claim.

## Venue

11.     The NRA admits that it transacts business in the Commonwealth of Virginia, specifically Fairfax County. The NRA can neither admit nor deny the remaining allegations pertaining to venue in Paragraph 11 because those allegations concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same

3

to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

12.     The NRA admits that venue is proper in this District for Ms. Hammer's breach of contract claim.

**General Allegations**

13.     The NRA can neither admit nor deny the statements set forth in Paragraph 13 of the Complaint because the statements are not allegations of fact but merely preliminary/introductory statements concerning the nature of the case and Ms. Hammer's involvement with the NRA to which no response is required. To the extent a response is required, the NRA denies the allegations, including any allegations of wrongdoing.

14.     The NRA can neither admit nor deny the statements set forth in Paragraph 14 of the Complaint because the statements are not allegations of fact but merely preliminary/introductory statements concerning the nature of the case and Ms. Hammer's involvement with the NRA to which no response is required. To the extent a response is required, the NRA denies the allegations, including any allegations of wrongdoing.

15.     The NRA admits that Ms. Hammer became the first female President of the NRA in 1995. The NRA is without sufficient information or belief as to the truth of the remaining factual allegations contained in Paragraph 15 and, therefore, denies the allegations.

16.     The NRA admits that for nearly forty-five (45) years, Ms. Hammer advocated for and advanced the NRA's interests in protecting Second Amendment gun-ownership rights. The

NRA is without sufficient information or belief as to the truth of the remaining factual allegations contained in Paragraph 16 and, therefore, denies the allegations.

17.    The statements contained in Paragraph 17 are not allegations of fact but purported statements and/or conclusions of law to which no response is required. To the extent a response is required, the NRA denies the allegations.

18.    The statements contained in Paragraph 18 are Ms. Hammer's characterization of the contents of the NRA's webpage. The content of any statements contained on the NRA's webpage is a written document, which speaks for itself and is the best evidence of its contents. Any characterization that is contrary to the express terms of that document are denied.

19.    The statements contained in Paragraph 19 purport to set forth a combination of Ms. Hammer's opinion and Ms. Hammer's characterization of the contents of the NRA's webpage. The content of any statements contained on the NRA's webpage is a written document, which speaks for itself and is the best evidence of its contents. Any characterization that is contrary to the express terms of that document are denied. No response is required to the statements in Paragraph 19 setting forth Ms. Hammer's opinion. To the extent a response is required, the allegations are denied.

**Marion Hammer's 2017 Contract With NRA**

20.    The NRA admits that on December 22, 2017, Ms. Hammer executed a contracting agreement with the NRA (the "2018 Contracting Agreement").

21.    Denied. Upon information and belief, the copy of the 2018 Contracting Agreement attached to the Complaint was altered by Ms. Hammer, in bad faith, to remove Section 2(C) for the purpose of this litigation. The NRA demands strict proof by Ms. Hammer of the authenticity of the copy of the 2018 Contracting Agreement attached to the Complaint.

22.     Denied. Upon information and belief, the copy of the 2018 Contracting Agreement attached to the Complaint was altered by Ms. Hammer, in bad faith, to remove Section 2(C) for the purpose of this litigation. The NRA demands strict proof by Ms. Hammer of the authenticity of the copy of the 2018 Contracting Agreement attached to the Complaint.

23.     The NRA admits that the 2018 Contracting Agreement contains the quoted language in this Paragraph. The NRA denies the remaining allegations in Paragraph 23.

24.     Denied. The NRA demands strict proof by Ms. Hammer of the authenticity of the copy of the 2018 Contracting Agreement attached to the Complaint.

25.     Denied.

26.     The statements contained in Paragraph 26 are a combination of Ms. Hammer's characterization of the contents of the 2018 Contracting Agreement and/or Ms. Hammer's characterization of statements or conclusions of law to which no response is required. To the extent a response is required, the allegations are denied. The NRA demands strict proof by Ms. Hammer of the authenticity of the copy of the 2018 Contracting Agreement attached to the Complaint.

### Hammer Is Solicited By NRA Opponents

27.     The NRA is without sufficient information or belief as to the truth of the factual allegations contained in Paragraph 27 and, therefore, denies the allegations.

28.     The NRA is without sufficient information or belief as to the truth of the factual allegations contained in Paragraph 28 and, therefore, denies the allegations.

29.     The NRA is without sufficient information or belief as to the truth of the factual allegations contained in Paragraph 29 and, therefore, denies the allegations.

30.     The NRA is without sufficient information or belief as to the truth of the factual allegations contained in Paragraph 30 and, therefore, denies the allegations.

31. The NRA is without sufficient information or belief as to the truth of the factual allegations contained in Paragraph 31 and, therefore, denies the allegations.

32. The NRA is without sufficient information or belief as to the truth of the factual allegations contained in Paragraph 32 and, therefore, denies the allegations.

33. The NRA is without sufficient information or belief as to the truth of the factual allegations contained in Paragraph 33 and, therefore, denies the allegations.

34. The NRA admits that Ms. Hammer and the NRA's former Executive Vice President, Wayne LaPierre, signed an Addendum extending the 2018 Contracting Agreement for a period of ten (10) years, subject to the 2018 Contracting Agreement's termination provision contained in Paragraph 2(C). The NRA denies the remaining allegations in Paragraph 34.

35. Admitted.

36. The NRA admits that Ms. Hammer did not participate in any of the NRA's retirement savings plans. The NRA denies the remaining allegations in Paragraph 36.

37. The NRA is without sufficient information or belief as to the truth of the factual allegations contained in Paragraph 37 and, therefore, denies the allegations.

38. The NRA admits that Ms. Hammer and the NRA's former Executive Vice President, Wayne LaPierre, signed an Addendum extending the 2018 Contracting Agreement for a period of ten (10) years, subject to the 2018 Contracting Agreement's termination provision contained in Paragraph 2(C). The NRA denies the remaining allegations in Paragraph 38.

39. The statements contained in Paragraph 39 are Ms. Hammer's characterization of meeting minutes generated during the meetings of the NRA Board's Audit Committee held between September 8-9, 2018. The NRA Board's Audit Committee meeting minutes is a written document. The NRA is without sufficient information or belief as to the truth of Ms. Hammer's

7

characterization of the NRA Board's Audit Committee meeting minutes and, therefore, denies the allegations. The NRA denies the remaining allegations in Paragraph 39.

40.    The statements contained in Paragraph 40 are not allegations of fact but an expression of Ms. Hammer's opinion to which no response is required. To the extent a response is required, the allegations are denied.

41.    The NRA denies that Ms. Hammer performed her obligations under the terms of the 2018 Contracting Agreement. The NRA is without sufficient information or belief as to the truth of the remaining factual allegations contained in Paragraph 41 and, therefore, denies the allegations.

42.    The NRA is without sufficient information or belief as to the truth of the factual allegations contained in Paragraph 42 and, therefore, denies the allegations.

43.    The statements contained in Paragraph 43 are a combination of factual allegations and Ms. Hammer's characterization of the contents of the NRA's webpage. The content of any statements contained on the NRA's webpage is a written document. Any characterization by Ms. Hammer that is contrary to the express terms of that document are denied. The NRA is without sufficient information or belief as to the truth of the remaining factual allegations contained in Paragraph 43 and, therefore, denies the allegations.

44.    Admitted.

45.    The statements contained in Paragraph 45 are a combination of Ms. Hammer's opinion and/or statements or conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

**The NRA Breaches The Contract**

46.     The NRA admits that in or around April 2024, Mr. Arulanandam informed Ms. Hammer that the NRA had terminated the 2018 Contracting Agreement. The NRA denies the remaining allegations contained in Paragraph 46.

47.     The NRA admits that Mr. Arulanandam made the decision to terminate the 2018 Contracting Agreement. The NRA denies the remaining allegations contained in Paragraph 47.

48.     Denied.

49.     The NRA denies that its termination of the 2018 Contracting Agreement in April 2024 breached the terms of the parties' agreement. The NRA is without sufficient information or belief as to the truth of the remaining factual allegations contained in Paragraph 49 and, therefore, denies the allegations.

50.     Denied.

51.     Denied.

**The NRA Continues to Use Plaintiff's Name, Image, and Likeness
without Plaintiff's Consent**

52.     The NRA denies that its termination of the 2018 Contracting Agreement in April 2024 breached the terms of the parties' agreement. The remaining allegations in Paragraph 52 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all

rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

53.     The allegations contained in Paragraph 53 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

54.     The allegations contained in Paragraph 54 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

55.     The allegations contained in Paragraph 55 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

56.     The allegations contained in Paragraph 56 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

### The NRA Defrauds Plaintiff

57.     The allegations contained in Paragraph 57 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida,

Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

58.    The allegations contained in Paragraph 58 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

59.    The allegations contained in Paragraph 59 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same

to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

60.     The allegations contained in Paragraph 60 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

61.     The allegations contained in Paragraph 61 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning

the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

62.     The allegations contained in Paragraph 62 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

63.     The allegations contained in Paragraph 63 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

64.    The allegations contained in Paragraph 64 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

65.    The allegations contained in Paragraph 65 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

66.    The allegations contained in Paragraph 66 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The

U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

<u>**COUNT ONE – BREACH OF CONTRACT**</u>

67.    The NRA repeats and incorporates by reference its response(s) to each of the allegations contained in the preceding paragraphs of Ms. Hammer's Complaint as if fully set forth herein.

68.    Denied.

69.    Denied.

<u>**COUNT TWO – VIOLATION OF SECTION 540.08, FLORIDA STATUTES**</u>
<u>**(UNAUTHORIZED USE OF NAME, IMAGE, AND LIKENESS)**</u>

70.    The NRA repeats and incorporates by reference its response(s) to each of the allegations contained in the preceding paragraphs of Ms. Hammer's Complaint as if fully set forth herein.

71.    The allegations contained in Paragraph 71 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is

16

properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

72.     The allegations contained in Paragraph 72 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

73.     The allegations contained in Paragraph 73 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida,

Case No. 4:25-cv-219-AW-MAF.

74.     The allegations contained in Paragraph 74 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

## COUNT THREE – COMMON LAW INVASION OF PRIVACY

75.     The NRA repeats and incorporates by reference its response(s) to each of the allegations contained in the preceding paragraphs of Ms. Hammer's Complaint as if fully set forth herein.

76.     The allegations contained in Paragraph 76 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning

the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

77. The allegations contained in Paragraph 77 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

### COUNT FOUR – UNJUST ENRICHMENT

78. The NRA repeats and incorporates by reference its response(s) to each of the allegations contained in the preceding paragraphs of Ms. Hammer's Complaint as if fully set forth herein.

79. The allegations contained in Paragraph 79 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations,

including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

80.    The allegations contained in Paragraph 80 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

81.    The allegations contained in Paragraph 81 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

## COUNT FIVE – CONVERSION

82.    The NRA repeats and incorporates by reference its response(s) to each of the allegations contained in the preceding paragraphs of Ms. Hammer's Complaint as if fully set forth herein.

83.    The allegations contained in Paragraph 83 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

84.    The allegations contained in Paragraph 84 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida,

21

Case No. 4:25-cv-219-AW-MAF.

85.    The allegations contained in Paragraph 85 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

86.    The allegations contained in Paragraph 86 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

87.    The allegations contained in Paragraph 87 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida,

Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

88.    The allegations contained in Paragraph 88 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

## COUNT SIX – DECEPTIVE AND UNFAIR TRADE PRACTICES

89.    The NRA repeats and incorporates by reference its response(s) to each of the allegations contained in the preceding paragraphs of Ms. Hammer's Complaint as if fully set forth herein.

90. The allegations contained in Paragraph 90 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

91. The allegations contained in Paragraph 91 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

92. The allegations contained in Paragraph 92 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The

U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

93.    The allegations contained in Paragraph 93 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

94.    The allegations contained in Paragraph 94 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is

properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

95.    The allegations contained in Paragraph 95 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

96.    The allegations contained in Paragraph 96 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida,

Case No. 4:25-cv-219-AW-MAF.

97.    The allegations contained in Paragraph 97 concern claims that are presently pending in a separate legal action before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF (filed on May 8, 2025), to which no response is required. The U.S. District Court for the Northern District of Florida severed Ms. Hammer's breach of contract claim from the pending action before that court on September 17, 2025 and transferred the same to this District pursuant to Fed. R. Civ. P. 21. Only Ms. Hammer's breach of contract claim is properly before this Court. To the extent a response is required, the NRA denies the allegations, including any wrongdoing, and expressly reserves all rights, defenses, and objections concerning the claims presently pending before the U.S. District Court for the Northern District of Florida, Case No. 4:25-cv-219-AW-MAF.

## PRAYER FOR RELIEF

Ms. Hammer's prayer for relief does not contain factual allegations to which a response is required. To the extent that a response is required, the NRA denies that Ms. Hammer is entitled to any of the relief sought or any relief whatsoever.

## RESERVATION OF RIGHTS

This Answer is based on the facts known to Defendant at this time. In the event that the NRA learns of additional or different facts through further investigation or discovery, the NRA reserves the right to amend this Answer. All allegations in Ms. Hammer's Complaint that are not expressly admitted in this Answer are denied.

## AFFIRMATIVE AND OTHER DEFENSES

The NRA asserts the defenses listed below and reserves the right to assert any additional defenses based upon information learned through discovery or otherwise. Furthermore, the

identification of the below defenses is not an admission that the NRA has the burden of proof with respect to any such defense.

## FIRST DEFENSE

Ms. Hammer's Complaint fails to state a cause of action for breach of contract upon which relief can be granted.

## SECOND DEFENSE

The 2018 Contracting Agreement contains a termination provision in Section 2(C) that permitted the NRA to terminate the agreement as Ms. Hammer alleges in the Complaint.

## THIRD DEFENSE

Ms. Hammer's breach of contract claim in the Complaint is barred by Ms. Hammer's unclean hands.

## FOURTH DEFENSE

Ms. Hammer's breach of contract claim in the Complaint is barred by doctrine of ultra vires.

## FIFTH DEFENSE

Upon information and belief, the copy of the 2018 Contracting Agreement attached to the Complaint was fraudulently altered by Ms. Hammer to remove Section 2(C) for the purpose of this litigation.

## SIXTH DEFENSE

Ms. Hammer materially breached the 2018 Contracting Agreement by failing to provide the NRA with any contracted for services. A party in material breach may not enforce a contract against the non-breaching party.

## SEVENTH DEFENSE

Ms. Hammer's breach of contract claim in the Complaint is barred, in whole or in part, because it was asserted in bad faith. Upon information and belief, Ms. Hammer knowingly misrepresented the operative terms of the 2018 Contracting Agreement and filed this action with malicious intent to harass, injure, or coerce the NRA, thereby precluding recovery.

## EIGHTH DEFENSE

Ms. Hammer is not entitled to recover her attorneys' fees under the terms of the 2018 Contracting Agreement.

## NINTH DEFENSE

Ms. Hammer has not suffered any cognizable loss or harm.

## TENTH DEFENSE

Ms. Hammer's breach of contract claim in the Complaint is barred by her failure to mitigate damages.

WHEREFORE, the NRA respectfully requests that Ms. Hammer's breach of contract claim in Count One of the Complaint be dismissed with prejudice; that Ms. Hammer be denied any and all relief; that the NRA be awarded its reasonable costs and attorneys' fees; and that the NRA be awarded any such further and additional relief that this Honorable Court shall deem just and proper.

## COUNTERCLAIM

COMES NOW Defendant/Counterclaim Plaintiff, The National Rifle Association of America, in the above-captioned matter, by and through its undersigned counsel, and asserts the following Counterclaims seeking damages, and other remedies, against Plaintiff/Counterclaim Defendant, Marion P. Hammer, and as cause therefore states the following:

## THE PARTIES

1.      The NRA is a corporation organized under the laws of the State of New York with its principal place of business located in Fairfax, Virginia.

2.      Ms. Hammer is a natural person over eighteen years of age and, upon information and belied, is a citizen of the State of Florida where she resides.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

*The National Rifle Association of America (NRA)*

5.      Founded in 1871, the NRA is the United States' longest-standing civil rights organization. With more than three million members, the NRA is dedicated to protecting the Nation's freedoms guaranteed by the Second Amendment to the U.S. Constitution through supporting activities that promote safe and responsible firearms ownership. The NRA, since its inception, has been the premier firearms education and training organization in the world.

6.      In furtherance of its mission, the NRA engages in extensive legislative, regulatory, and political advocacy at both the state and federal levels, including the development of policy, education of lawmakers and the public, and support or opposition of legislation affecting firearm ownership and use.

*The NRA's Board of Directors*

7.      The NRA has adopted bylaws to govern the internal affairs of the organization.

8.      Pursuant to its bylaws, the NRA is governed by a Board of Directors who are elected by the NRA's members.

9.      The NRA's Board of Directors is tasked with ultimate oversight and governance of the organization. This includes responsibility for setting broad policies, strategic direction of the NRA, managing the organization's property and fiscal affairs, and ensuring that the association operates in the best interest of its mission and members.

10.     Members of the NRA's Board of Directors are fiduciaries of the organization. As such, each Board member owes a fiduciary duty of loyalty to the organization to act in good faith and in the organization's best interests.

11.     Furthermore, members of the NRA's Board of Directors are prohibited from entering into any related party transactions with the organization unless the transaction is determined by the Board of Directors, or an authorized committee of the Board of Directors, to be fair, reasonable, and in the organization's best interest.

12.     Specifically, the NRA's bylaws provide that "[n]o director or member of the Executive Council shall receive any salary or other private benefit unless specifically authorized by resolution of the Board of Directors or an authorized committee thereof[.]"

13.     The NRA's Board of Directors has dozens of standing and special committees of the Board, including an Audit Committee.

14.     The Audit Committee's responsibilities are set forth in the Audit Committee Charter and the NRA's bylaws. The Audit Committee's responsibilities include, among other things, managing external audits, overseeing internal controls, and evaluating potential conflicts of interest.

15.     Pursuant to the Audit Committee's Charter and the NRA's Conflict of Interest and Related Party Transaction Policy, the Audit Committee reviews all transactions of the organization that involve potential conflicts of interest and determines whether to approve those transactions.

31

16.     At the time of the events alleged herein, the Audit Committee would document its consideration of any conflicts of interest and related party transactions, including, but not limited to, (1) "[a]lternative transactions to the extent available," (2) "[t]he NRA's mission and resources," (3) "[t]he possibility of creating an appearance of impropriety that might impair the confidence in, or the reputation of, the NRA (even if there is no actual conflict or wrongdoing)," and (4) "[w]hether the conflict may result in any private inurement, excess benefit transaction, or impermissible private benefit under laws applicable to tax-exempt organizations."

### *Marion P. Hammer*

17.     Ms. Hammer is a well-known Second Amendment advocate in Florida.

18.     Ms. Hammer is a former member of the NRA's Board of Directors, serving as an elected director of the organization from 1982 through 2022.

19.     During her tenure as a member of the organization's Board of Directors, Ms. Hammer owed the NRA a fiduciary duty of loyalty to act in good faith and in the organization's best interests. Ms. Hammer was also prohibited from entering into any related party transactions with the NRA that were not approved by either the NRA's Board of Directors or an authorized committee of the Board of Directors.

### *Wayne LaPierre*

20.     Wayne LaPierre is the former Executive Vice President (EVP) of the NRA, a position he held with the organization between 1991 and January 31, 2024.

21.     As the NRA's EVP, Mr. LaPierre was responsible for, among other things, directing the affairs of the NRA in accordance with the programs and policies established by the Board of Directors. Mr. LaPierre also was an *ex officio* member (i.e., with voice but without vote) of the NRA's Board of Directors and certain of its committees.

22.    During his tenure as the NRA's EVP, Mr. LaPierre owed the NRA a fiduciary duty of loyalty to act in good faith and in the organization's best interests.

23.    Ms. Hammer and Mr. LaPierre maintained a close relationship during their time with the NRA.

### Ms. Hammer's Contracting Agreements with the NRA from 2004-2017

24.    During her tenure as a member of the NRA's Board of Directors, Ms. Hammer also served as a contractor to the NRA.

25.    With respect to entering into agreements with persons outside of the NRA to provide services, the NRA's policy is to retain a contractor when, among other things, existing staff does not have the requisite skills to perform a desired task and the nature of the engagement can be paid by the project, day, or hour.

26.    Due to Ms. Hammer's experience and accomplishments as a Second Amendment advocate, the NRA contracted with Ms. Hammer to provide consulting services to the organization beginning in 2004. *See* Hammer 2004 Contracting Agreement, Ex. 1.

27.     Between May 2, 2004 and November 1, 2016, Ms. Hammer executed ten separate Contracting Agreements with the NRA. *See* Hammer 2004-2017 Contracting Agreements, Exs. 1-10.

28.    Each Contracting Agreement identifies, among other things, the services Ms. Hammer would provide to the NRA, *id*. § 1, the compensation Ms. Hammer would receive in exchange for her services, *id*. § 3, the length of the particular Contracting Agreement's term, *id*. § 2(A), the manner in which the Agreement may be renewed, *id*. § 2(B), and how Ms. Hammer's Contracting Agreement could be terminated, *id*. § 2(C).

29.     Pertinent here, Ms. Hammer's 2004-2017 Contracting Agreements stated that she would "perform services in the form of advice, analysis, and other duties reasonably assigned by the Executive Vice President of the NRA [i.e., Mr. LaPierre] . . . including providing information, advice and counsel on legislation, initiative, referenda, election, communication and media matters and other related services as may be requested by the NRA[.]" *Id*. § 1.

30.     Ms. Hammer's 2004-2017 Contracting Agreements each contain an identical termination provision in Section 2(C), which states that "[e]ach party may, in its sole discretion, terminate this Agreement, with or without cause, immediately upon 30 days written notice."

31.     Ms. Hammer's 2004-2017 Contracting Agreements constituted related party transactions with the organization.

32.     The NRA's Audit Committee approved Ms. Hammer's Contracting Agreements entered into with the organization between May 2, 2004 and November 1, 2016, determining that each Contracting Agreement was fair, reasonable, and in the NRA's best interest.

33.     Between May 2, 2004 and December 21, 2017, Ms. Hammer performed under the terms of her Contracting Agreements, providing consulting services to the NRA in exchange for payment for the same.

### Ms. Hammer's 2018 Contracting Agreement and Addendum

34.     On December 22, 2017, Ms. Hammer executed an eleventh Contracting Agreement with the NRA (the "2018 Contracting Agreement"). *See* Hammer 2018 Contracting Agreement, Ex. 11. Ms. Hammer's 2018 Contracting Agreement was for a one-year term beginning on January 1, 2018, *id*. § 2(A), and paid Ms. Hammer a $168,000.00 fee for consulting services to be provided to the NRA, *id*. 3(A).

34

35.     Upon information and belief, Mr. LaPierre, and/or others close to him, negotiated the terms of the 2018 Contracting Agreement with Ms. Hammer.

36.     At this time, Ms. Hammer was a member of the NRA's Board of Directors.

37.     Ms. Hammer's 2018 Contracting Agreement constituted a related party transaction with the NRA.

38.     Mr. LaPierre authenticated Ms. Hammer's 2018 Contracting Agreement in lawsuit brought against the NRA by the State of New York, *People of the State of New York, by Letitia James, Attorney General of the State of New York v. The National Rifle Association of America, et. al*, Index No. 451625/2020 (Sup. Ct. N.Y. Cnty. Filed on Aug. 6, 2020) (the "NY AG Litigation"). *See* LaPierre NY AG Trial Testimony, Ex. 12 at 4-5 (Trial Tr. 2235:17 – 2236:1, authenticating Ex. 11 (Tr. Ex. PX-387) as the true and correct version of Ms. Hammer's 2018 Contracting Agreement).

39.     Identical to each of Ms. Hammer's Contracting Agreements from 2004-2017, Section 1 of the 2018 Contracting Agreement states that Ms. Hammer would "perform services in the form of advice, analysis, and other duties reasonably assigned by the Executive Vice President of the NRA [i.e., Mr. LaPierre] . . . including providing information, advice and counsel on legislation, initiative, referenda, election, communication and media matters and other related services as may be requested by the NRA[.]" Ex. 11 § 1.

40.     Ms. Hammer admits in Paragraphs 23-24 of her Complaint that through the terms of her 2018 Contracting Agreement, she "was [] retained by the NRA to perform work as assigned and requested." Compl. ¶¶ 23-24.

41.     Section 2(C) of the 2018 Contracting Agreement states that "[e]ach party may, in its sole discretion, terminate this Agreement, with or without cause, immediately upon 30 days written notice." Ex. 11 § 2(C).

42.     Mr. LaPierre testified in the NY AG Litigation that the 2018 Contracting Agreement contains a termination provision. Ex. 12 at 7 (Trial Tr. 2238:10, "Yes, that's correct, with a 30-day cancellation.") and 8 (Trial Tr. 2404:16-18, "Q. Is Ms. Hammer's contract a long-term contract? A. No, it is a 30-day contract. It has a 30-day revocation clause.").

43.     Ms. Hammer has actual knowledge that the 2018 Contracting Agreement contains a termination provision in Section 2(C).

44.     About four months after Ms. Hammer executed the 2018 Contracting Agreement, Ms. Hammer and Mr. LaPierre executed an Addendum on April 16, 2018. *See* Addendum to Hammer 2018 Contracting Agreement, Ex. 13.

45.     Mr. LaPierre authenticated the Addendum to Ms. Hammer's 2018 Contracting Agreement in the NY AG Litigation. *See* Ex. 12 at 6-7 (Trial Tr. 2237:16 – 2238:4, authenticating Ex. 13 (Trial Ex. PX-386) as the true and correct version of the Addendum to Ms. Hammer's 2018 Contracting Agreement).

46.     Mr. LaPierre also negotiated the terms of the Addendum to the 2018 Contracting Agreement with Ms. Hammer.

47.     The 2018 Addendum amended (1) Section 3(A) of Hammer's 2018 Contracting Agreement to increase Ms. Hammer's fee to $220,000.00; and (2) Section 2(A) to extend the term of Ms. Hammer's 2018 Contracting Agreement from one to ten years. Ex. 13.

48.     The Addendum to Ms. Hammer's 2018 Contracting Agreement did not modify or displace the NRA's ability to terminate the 2018 Contracting Agreement pursuant to Section 2(C).

*Id*.; *see also* Ex. 12 at 7 ("This [Addendum] increased Ms. Hammer's compensation to 220,000 annually; correct? Yes, that's correct. For a ten-year period? Yes, that's correct with a 30-day cancellation.").

49.    The Addendum to Ms. Hammer's 2018 Contracting Agreement constituted a related party transaction with the NRA.

50.    Ms. Hammer resigned from the NRA's Board of Directors in September 2024.

51.    The NRA terminated Ms. Hammer's 2018 Contracting Agreement on April 22, 2024 pursuant to Section 2(C). Ex. 11 § 2(C).

52.    The NRA had the ability to terminate Ms. Hammer's 2018 Consulting Agreement unilaterally and without cause pursuant to Section 2(C). Exs. 11-13.

53.    Ms. Hammer has actual knowledge that the NRA had the ability to terminate Ms. Hammer's 2018 Consulting Agreement unilaterally and without cause pursuant to Section 2(C). Exs. 11-13.

### *Ms. Hammer and Mr. LaPierre Conspired to Defraud the NRA and Provide Ms. Hammer with an Excess Benefit Under the Guise of a Consulting Agreement*

54.    After terminating Ms. Hammer's 2018 Contracting Agreement, the NRA learned that Ms. Hammer did not provide any services of value to the NRA "in the form of advice, analysis, and other duties reasonably assigned by the Executive Vice President of the NRA [i.e., Mr. LaPierre] . . . including providing information, advice and counsel on legislation, initiative, referenda, election, communication and media matters and other related services as may be requested by the NRA" between January 1, 2018 and April 22, 2024 pursuant to the terms of the 2018 Contracting Agreement.

55.    The purpose of Ms. Hammer's 2018 Contracting Agreement, and its subsequent extension via the Addendum, was not for Ms. Hammer to provide the NRA with any consulting

services, but, rather, to provide Ms. Hammer with a means for the NRA to compensate her while providing nothing in return (i.e., an improper excess benefit).

56.    Ms. Hammer admits to this in her Complaint.

57.    In Paragraphs 30, 32, 36, and 49 of her Complaint, Ms. Hammer states that the purpose of the 2018 Contracting Agreement was not to provide consulting services but to recognize her "years of valuable service to the NRA," "assist her in transitioning . . . to private life," and "fund[] a retirement for her future."

58.    Mr. LaPierre did not receive the requisite approval from the NRA's Audit Committee in advance of executing the 2018 Contracting Agreement with Ms. Hammer. Ex. 12 at 4-6.

59.    Mr. LaPierre did not notify or receive approval from the NRA's Audit Committee prior to executing the Addendum to Ms. Hammer's 2018 Contracting Agreement. *Id*. at 6-7.

60.    The Audit Committee did not ratify either Ms. Hammer's 2018 Contracting Agreement or the Addendum thereto until *after* the documents were already executed by Ms. Hammer and Mr. LaPierre.

61.    On information and belief, Mr. LaPierre falsely represented to the Audit Committee, as represented by his signature on the 2018 Contracting Agreement and Addendum, that (1) Ms. Hammer would continue to provide consulting services to the NRA, as she had done pursuant to her Contracting Agreements from 2004-2017; (2) the services Ms. Hammer would provide to the NRA were of the sort that "no other available possesses" comparable to Ms. Hammer; (3) an increase in Ms. Hammer's "consulting fee" to $220,000.00 was fair, reasonable, and in the best interests of the NRA, given that Ms Hammer would continue to provide services;

38

and (4) a ten-year Contracting Agreement with Ms. Hammer, as opposed to executing annual agreements, was fair, reasonable, and in the best interests of the NRA.

62.    In reality, the purpose of the 2018 Contracting Agreement, and the subsequent Addendum, was to provide Ms. Hammer with an excess benefit from the NRA and not to provide consulting services to the organization. *See* Compl. ¶¶ 30, 32, 36, and 49.

63.    The NRA's Audit Committee relied upon the representations made in the 2018 Contracting Agreement and Addendum when deciding to ratify the same.

64.    On information and belief, Mr. LaPierre and Ms. Hammer planned to and conspired for Ms. Hammer to obtain an improper, excess benefit from the NRA through the 2018 Contracting Agreement and Addendum while falsely representing to the NRA that the same were for the purpose of providing consulting services to the organization that could not be obtained elsewhere.

65.    The NRA's Audit Committee would not have ratified either Ms. Hammer's 2018 Contracting Agreement or the Addendum for the sole purpose of compensating Ms. Hammer while receiving nothing in return.

66.    Ms. Hammer's 2018 Contracting Agreement and Addendum constitute an excess benefit and self-dealing by Ms. Hammer.

67.    Ms. Hammer breached her duty of loyalty to the NRA as a member of its Board of Directors by self-dealing to obtain an excess benefit from the NRA that she was not entitled to receive.

68.    Between January 1, 2018 and April 22, 2024, Ms. Hammer received approximately $1,419,000.00 in payments from the NRA pursuant to the 2018 Contracting Agreement and Addendum while providing no services of value to the organization in return.

69.     The NRA's investigation into Ms. Hammer's actions described herein remains ongoing.

## COUNT I
### Breach of Contract

70.     The NRA adopts and incorporates, by reference, the allegations contained above with the same effect as if fully set forth herein.

71.     The 2018 Contracting Agreement entered into between the NRA and Ms. Hammer is a valid, binding, and legally enforceable contract, supported by adequate consideration.

72.     The NRA has fully performed and fulfilled its obligations under the 2018 Contracting Agreement.

73.     Ms. Hammer has breached Section 1 "Services" of the Agreement.

74.     Section 1 states that Ms. Hammer would "perform services in the form of advice, analysis, and other duties reasonably assigned by the Executive Vice President of the NRA [i.e., Mr. LaPierre] . . . including providing information, advice and counsel on legislation, initiative, referenda, election, communication and media matters and other related services as may be requested by the NRA[.]" Ex. 11, § 1.

75.     However, between January 1, 2018 and April 22, 2024, Ms. Hammer provided no services of value to the organization.

76.     Between January 1, 2018 and April 22, 2024, Ms. Hammer received approximately $1,419,000.00 in payments from the NRA pursuant to the 2018 Contracting Agreement while providing no services of value to the organization in return.

77.     Ms. Hammer's receipt of approximately $1,419,000.00 in payments from the NRA pursuant to the 2018 Contracting Agreement while providing no services of value to the organization breached the terms of Section 1 of the 2018 Contracting Agreement.

78.     As a direct and proximate result of Ms. Hammer's breach, the NRA has suffered damages in the approximate amount of $1,419,000.00.

WHEREFORE, the NRA respectfully requests that the Court award the following relief:

a.      Enter judgment in the NRA's favor and against Ms. Hammer;

b.      Award the NRA compensatory damages in the approximate amount of $1,419,000.00, or an amount to be determined at trial, plus pre- and post-judgment interest;

c.      Award the NRA its reasonable attorneys' fees and costs incurred in this litigation; and

d.      Award the NRA any such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT II
### Breach of Fiduciary Duty of Loyalty

79.     The NRA adopts and incorporates, by reference, the allegations contained above with the same effect as if fully set forth herein.

80.     A member of an organization's board of directors owes a fiduciary duty of loyalty to the organization.

81.     A member of an organization's board of directors breaches their fiduciary duty of loyalty when they, among other things, engage in self-dealing, use the organization's assets for their personal benefit, or act in bad faith.

82.     At all times relevant to this action, Ms. Hammer was in a fiduciary relationship with the NRA as a member of its Board of Directors.

83.     By her actions described above, Ms. Hammer breached her fiduciary duty of loyalty to the NRA while serving as a member of the organization's Board of Directors.

41

84.    Ms. Hammer breached her fiduciary duty of loyalty to the NRA by self-dealing with respect to the 2018 Contracting Agreement and Addendum. The NRA entered into the 2018 Contracting Agreement for the purpose of securing consulting services from Ms. Hammer that could not be obtained elsewhere. The NRA's Audit Committee ratified the Addendum to the 2018 Contracting Agreement for the purpose of securing consulting services from Ms. Hammer that could not be obtained elsewhere. Ms. Hammer, through Mr. LaPierre's endorsement, represented to the NRA that the purpose of the 2018 Contracting Agreement and Addendum was to provide consulting services to the NRA. However, and unknown to the NRA, the purpose of the 2018 Contracting Agreement and Addendum was to provide Ms. Hammer with an excess benefit from the NRA and not to provide consulting services to the organization. *See* Compl. ¶¶ 30, 32, 36, and 49.

85.    The NRA paid Ms. Hammer approximately $1,419,000.00 for consulting services that Ms. Hammer did not provide to the organization and did not intend to provide.

86.    Ms. Hammer's actions were committed in bad faith and to the NRA's detriment.

87.    The NRA reposed trust and confidence in Ms. Hammer that she would abide by her fiduciary duties given her decades-long service as a member of the organization's Board of Directors.

88.    The NRA was damaged by Ms. Hammer's disloyal conduct.

89.    Ms. Hammer's disloyal conduct directly and proximately caused the NRA to suffer damages.

90.    All of these factors together evidence actual malice and motive to commit wrongdoing to misappropriate the NRA's funds, justifying an award of exemplary and punitive

42

damages, including the NRA's reasonable attorneys' fees and costs incurred, to not only punish Ms. Hammer but deter others from engaging in similar conduct.

WHEREFORE, the NRA respectfully requests that the Court award the following relief:

a.    Enter judgment in favor of the NRA and against Ms. Hammer;

b.    Award the NRA compensatory damages in the approximate amount of $1,419,000.00, or an amount to be determined at trial, plus pre- and post-judgment interest;

c.    Award the NRA punitive damages in an amount to be proven at trial, but in no event less than $100,000.00;

d.    Award the NRA its reasonable attorneys' fees and costs incurred in this litigation; and

e.    Award the NRA any such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT III
### Unjust Enrichment

91.    The NRA adopts and incorporates, by reference, the allegations contained above with the same effect as if fully set forth herein.

92.    Ms. Hammer took the NRA's property between January 1, 2018 and April 22, 2024 when she received approximately $1,419,000.00 from the NRA pursuant to the 2018 Contracting Agreement and Addendum for consulting services that were not provided to the organization. Ms. Hammer obtained $1,419,000.00 in payments from the NRA under the false pretense that she would be providing the NRA with consulting services identified in Section 1 of the 2018 Contracting Agreement. In reality, the purpose of the 2018 Contracting Agreement, and

43

Addendum, was to provide Ms. Hammer with an excess benefit from the NRA and not to provide consulting services to the organization. *See* Compl. ¶¶ 30, 32, 36, and 49.

93.    Ms. Hammer knowingly derived benefit, including private financial gain, from her self-dealing and knowing and willful misappropriation of the NRA's funds under false pretenses.

94.    Ms. Hammer took these specifically identifiable NRA funds in the approximate amount of $1,419,000.00 intentionally, without permission or justification, under false pretenses to confer a benefit upon herself.

95.    Ms. Hammer was aware of the value of the funds she misappropriated from the NRA between January 1, 2018 and April 22, 2024.

96.    Ms. Hammer has retained the benefits from her scheme to contract with the NRA to provide consulting services when she did not intend to provide any such consulting services, which renders it inequitable for her to retain such benefits under the circumstances without payment to the NRA. It would be particularly inequitable for Ms. Hammer to be allowed to retain the NRA's funds that she received under false pretenses.

97.    As a result of Ms. Hammer's conduct set forth above, Ms. Hammer has been unjustly enriched by the receipt and appreciation of the NRA's funds resulting from her use of false pretenses to enter into the 2018 Contracting Agreement with the NRA.

98.    The NRA was damaged as a result of Ms. Hammer's use of false pretenses to enter into the 2018 Contracting Agreement and Addendum with the NRA and receive approximately $1,419,000.00 from the NRA for consulting services that were not provided.

99.    As a decades-long member of the NRA's Board of Directors, Ms. Hammer was a fiduciary of the organization and owed the NRA a duty of loyalty to act in good faith and in the organization's best interests. Ms. Hammer was conscious of her wrongdoing, as evidenced by the

44

fact that she admits in her Complaint that the purpose of the 2018 Contracting Agreement was to provide herself with an excess benefit from the NRA and not to provide consulting services to the organization. *See* Compl. ¶¶ 30, 32, 36, and 49.

100.   All of these factors together evidence actual malice and motive to commit wrongdoing to misappropriate the NRA's funds, justifying an award of exemplary and punitive damages, including the NRA's reasonable attorneys' fees and costs incurred, to not only punish Ms. Hammer but deter others from engaging in similar conduct.

WHEREFORE, the NRA respectfully requests that the Court award the following relief:

a.   Enter judgment in favor of the NRA and against Ms. Hammer;

b.   Award the NRA compensatory damages in the approximate amount of $1,419,000.00, or an amount to be proven at trial, plus pre- and post-judgment interest;

c.   Award the NRA punitive damages in an amount to be determined at trial, but in no event less than $100,000.00;

d.   Award the NRA its reasonable attorneys' fees and costs incurred in this litigation; and

e.   Award the NRA any such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT IV
**Violation of Virginia Business Conspiracy Act**
**Va. Code §§ 18.2-499, 500**

101.   The NRA adopts and incorporates, by reference, the allegations contained above with the same effect as if fully set forth herein.

102.    Ms. Hammer and Mr. LaPierre are two or more persons who combined, associated, agreed, mutually undertook, and/or acted in concert together to achieve unlawful objectives described above, in violation of Va. Code § 18.2-499.

103.    At all times relevant hereto, Ms. Hammer and Mr. LaPierre acted willfully and maliciously to injure the NRA in its reputation, trade, business, and/or profession by conspiring for Ms. Hammer to obtain an improper, excess benefit from the NRA through the 2018 Contracting Agreement and Addendum while falsely representing to the NRA that the same was for the purpose of providing consulting services to the organization that could not be obtained elsewhere.

104.    Ms. Hammer and Mr. LaPierre thereby combined, agreed, and undertook actions mutually for the purpose of injuring the NRA in its trade, business, and profession.

105.    Ms. Hammer took affirmative steps towards completion of this agreement towards an improper purpose, including but not limited to negotiating the terms of the 2018 Contracting Agreement and Addendum with Mr. LaPierre, and/or his associates, and entering into the same with the NRA, to obtain an excess benefit while falsely representing to the NRA that the 2018 Contracting Agreement, and Addendum, was for the purpose of providing consulting services to the organization that could not be obtained elsewhere.

106.    Mr. LaPierre took affirmative steps towards completion of this agreement towards an improper purpose, including but not limited to negotiating the terms of the 2018 Contracting Agreement and Addendum with Ms. Hammer and falsely representing to the NRA's Audit Committee, by his signature on the documents, that the same were for the purpose of providing consulting services to the organization that could not be obtained elsewhere when, in reality, the purpose of the 2018 Contracting Agreement, and Addendum, was to provide Ms. Hammer with an excess benefit from the NRA and not to provide consulting services to the organization.

107. Ms. Hammer and Mr. LaPierre undertook these actions willfully and maliciously.

108. Ms. Hammer and Mr. LaPierre also agreed to undertake these wrongful actions while Ms. Hammer was a member of the NRA's Board of Directors and Mr. LaPierre was still an employee of the NRA as its Executive Vice President.

109. As a direct and proximate consequence of Ms. Hammer's and Mr. LaPierre's concerted actions, the NRA has suffered damages in the approximate amount of $1,419,000.00.

110. The NRA is entitled to treble economic damages and its reasonable attorneys' fees, together with its costs and reasonable expenses incurred in connection with this litigation, arising out of Ms. Hammer's and Mr. LaPierre's concerted actions.

WHEREFORE, the NRA respectfully requests that the Court award the following relief:

a. Enter judgment in the NRA's favor and against Ms. Hammer;

b. Award the NRA compensatory damages in the approximate amount of $1,419,000.00, or an amount to be determined at trial, plus pre- and post-judgment interest;

c. Award the NRA treble damages;

d. Award the NRA its reasonable attorneys' fees and costs incurred in this litigation; and

e. Award the NRA any such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

### COUNT V
### Virginia Common Law Conspiracy

111. The NRA adopts and incorporates, by reference, the allegations contained above with the same effect as if fully set forth herein.

112.    Ms. Hammer and Mr. LaPierre are two or more persons who combined, associated, agreed, mutually undertook, and/or acted in concert together to achieve unlawful objectives described above, in violation of the common law and statutory provisions of the Commonwealth of Virginia.

113.    At all times relevant hereto, Ms. Hammer and Mr. LaPierre acted willfully and maliciously to injure the NRA in its reputation, trade, business, and/or profession by conspiring for Ms. Hammer to obtain an improper, excess benefit from the NRA through the 2018 Contracting Agreement and Addendum while falsely representing to the NRA that the same were for the purpose of providing consulting services to the organization that could not be obtained elsewhere.

114.    Ms. Hammer and Mr. LaPierre thereby combined, agreed, and undertook actions mutually for the purpose of injuring the NRA in its trade, business, and profession.

115.    Ms. Hammer took affirmative steps towards completion of this agreement towards an improper purpose, including but not limited to negotiating the terms of the 2018 Contracting Agreement and Addendum with Mr. LaPierre, and/or his associates, and entering into the same with the NRA, to obtain an excess benefit while falsely representing to the NRA that the 2018 Contracting Agreement, and Addendum, was for the purpose of providing consulting services to the organization that could not be obtained elsewhere.

116.    Mr. LaPierre took affirmative steps towards completion of this agreement towards an improper purpose, including but not limited to negotiating the terms of the 2018 Contracting Agreement and Addendum with Ms. Hammer and falsely representing to the NRA's Audit Committee, by his signature on the documents, that the same were for the purpose of providing consulting services to the organization that could not be obtained elsewhere when, in reality, the

purpose of the 2018 Contracting Agreement, and Addendum, was to provide Ms. Hammer with an excess benefit from the NRA and not to provide consulting services to the organization.

117.    Ms. Hammer and Mr. LaPierre undertook these actions willfully and maliciously.

118.    Ms. Hammer and Mr. LaPierre also agreed to undertake these wrongful actions while Ms. Hammer was a member of the NRA's Board of Directors and Mr. LaPierre was still an employee of the NRA as its Executive Vice President.

119.    As a direct and proximate consequence of Ms. Hammer's and Mr. LaPierre's concerted actions, the NRA has suffered damages in the approximate amount of $1,419,000.00.

WHEREFORE, the NRA respectfully requests that the Court award the following relief:

a.    Enter judgment in the NRA's favor and against Ms. Hammer;

b.    Award the NRA compensatory damages in the approximate amount of $1,419,000.00, or an amount to be determined at trial, plus pre- and post-judgment interest;

c.    Award the NRA punitive damages in an amount to be proven at trial, but in no event less than $100,000.00;

d.    Award the NRA its reasonable attorneys' fees and costs incurred in this litigation; and

e.    Award the NRA any such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT VI
### Conversion

120.    The NRA adopts and incorporates, by reference, the allegations contained above with the same effect as if fully set forth herein.

121.    The NRA owned and had the right to possess its property and funds.

49

122. Ms. Hammer took the NRA's property between January 1, 2018 and April 22, 2024 when she received approximately $1,419,000.00 from the NRA pursuant to the 2018 Contracting Agreement and Addendum for consulting services that were not provided. Ms. Hammer obtained $1,419,000.00 in payments from the NRA under the false pretense that she would be providing the NRA with consulting services pursuant to the 2018 Contracting Agreement. In reality, the purpose of the 2018 Contracting Agreement, and Addendum, was to provide Ms. Hammer with an excess benefit from the NRA and not to provide consulting services to the organization. *See* Compl. ¶¶ 30, 32, 36, and 49.

123. Ms. Hammer took these specifically identifiable funds intentionally, without permission or justification, through false pretenses to confer a benefit upon herself.

124. Ms. Hammer wrongfully exercised dominion or control over the NRA's property and its funds, totaling approximately $1,419,000.00, and she continues to maintain hostile dominion and control over the funds to this day.

125. The NRA is entitled to immediate possession of the funds, which are at risk in Ms. Hammer's control.

126. On November 24, 2025, the NRA made demands of Ms. Hammer for the return of its funds. However, Ms. Hammer has failed to return the NRA's funds, in full, and continues to exercise dominion over them in a manner that is inconsistent with and in denial of the NRA's rights to same.

127. Ms. Hammer's unlawful retention of all of the above referenced funds belonging to the NRA, and her failure, despite demands made by the NRA, to return them, constitutes conversion of the funds.

128.    Ms. Hammer's conduct in misappropriating $1,419,000.00 in funds from the NRA between January 1, 2018 and April 22, 2024 was egregious under the circumstances, especially when considering that Ms. Hammer was a member of the NRA's Board of Directors.

129.    As a decades-long member of the NRA's Board of Directors, Ms. Hammer was a fiduciary of the organization and owed the NRA a duty of loyalty to act in good faith and in the organization's best interests. Ms. Hammer was conscious of her wrongdoing, as evidenced by the fact that she admits in her Complaint that the purpose of the 2018 Contracting Agreement was to provide herself with an excess benefit from the NRA and not to provide consulting services to the organization. *See* Compl. ¶¶ 30, 32, 36, and 49.

130.    All of these factors together evidence actual malice and motive to commit wrongdoing to misappropriate the NRA's funds, justifying an award of exemplary and punitive damages, including the NRA's reasonable attorneys' fees and costs incurred, to not only punish Ms. Hammer but deter others from engaging in similar conduct.

WHEREFORE, the NRA respectfully requests that the Court award the following relief:

a.    Enter judgment in the NRA's favor and against Ms. Hammer;

b.    Award the NRA compensatory damages in the approximate amount of $1,419,000.00, or an amount to be determined at trial, plus pre- and post-judgment interest;

c.    Award the NRA punitive damages in an amount to be proven at trial, but in no event less than $100,000.00;

d.    Award the NRA its reasonable attorneys' fees and costs incurred in this litigation; and

e.      Award the NRA any such further and additional relief as the nature of the case may require and which this Honorable Court shall deem just and proper.

## COUNT VII
## Fraud in the Inducement

131.    The NRA adopts and incorporates, by reference, the allegations contained above with the same effect as if fully set forth herein.

132.    As a result of Ms. Hammer's conduct set forth above, Ms. Hammer fraudulently induced the NRA to enter into the 2018 Contracting Agreement and ratify the Addendum thereto.

133.    At all times relevant to this action, Ms. Hammer was in a fiduciary relationship with the NRA as a member of its Board of Directors.

134.    At all times relevant to this action, Mr. LaPierre was an employee of the NRA who served as the organization's Executive Vice President (EVP). LaPierre also was an *ex officio* member (i.e., with voice but without vote) of the NRA's Board of Directors and certain of its committees. As the NRA's EVP, Mr. LaPierre was responsible for, among other things, directing the affairs of the NRA in accordance with the programs and policies established by the Board of Directors. This includes presenting contracts and expenditures for ratification to the appropriate committee of the NRA's Board of Directors.

135.    Mr. LaPierre and Ms. Hammer planned to and conspired for Ms. Hammer to obtain an improper, excess benefit from the NRA while providing nothing to the organization in return. Mr. LaPierre and Ms. Hammer entered into an agreement and common plan to cause the NRA to execute a "consulting agreement" with Ms. Hammer by which Ms. Hammer would receive an annual sum from the NRA for "consulting services" that Ms. Hammer would not provide. Mr. LaPierre would then represent to the NRA's Board of Directors, through his signature on the

agreement, that the consulting services to be provided by Ms. Hammer were needed and could not be obtained elsewhere.

136.    As part of this scheme, Ms. Hammer and Mr. LaPierre, and/or his associates, negotiated the 2018 Contracting Agreement, representing therein in Section 1 that Ms. Hammer would "perform services in the form of advice, analysis, and other duties reasonably assigned by the Executive Vice President of the NRA [i.e., Mr. LaPierre] . . . including providing information, advice and counsel on legislation, initiative, referenda, election, communication and media matters and other related services as may be requested by the NRA" in exchange for an annual consulting fee in the amount of $168,000.00.

137.    In reality, the purpose of the 2018 Contracting Agreement was to provide Ms. Hammer with an excess benefit from the NRA and not to provide consulting services to the organization. *See* Compl. ¶¶ 30, 32, 36, and 49.

138.    In furtherance of this scheme, Ms. Hammer and Mr. LaPierre negotiated the Addendum to increase the term of the 2018 Contracting Agreement from one to ten years and increase Ms. Hammer's annual consulting fee from $168,000.00 to $220,000.00.

139.    On information and belief, Mr. LaPierre falsely represented to the Audit Committee, as represented by his signature on the 2018 Contracting Agreement and Addendum, that (1) Ms. Hammer would continue to provide consulting services to the NRA, as she had done pursuant to her Contracting Agreements from 2004-2017; (2) the services Ms. Hammer would provide to the NRA were of the sort that existing staff could not perform; and (3) the term and fee to be paid for Ms. Hammer under the 2018 Consulting Agreement and Addendum were fair, reasonable, and in the best interests of the NRA.

140. Mr. LaPierre's representations to the NRA's Audit Committee were false when made. Mr. LaPierre knew that the purpose of Ms. Hammer's 2018 Contracting Agreement and Addendum were to provide Ms. Hammer with an excess benefit and not to provide consulting services to the NRA. Mr. LaPierre knew that the 2018 Contracting Agreement and Addendum were not necessary nor in the NRA's best interests.

141. Ms. Hammer knew of the false representations contained in the 2018 Contracting Agreement and Addendum that were presented to the NRA's Audit Committee. Ms. Hammer intended and expected that the NRA's Audit Committee would rely upon Mr. LaPierre's endorsement when deciding to ratify the 2018 Contracting Agreement and Addendum.

142. The NRA's Audit Committee relied upon the representations made in the 2018 Contracting Agreement and Addendum when deciding to ratify the same.

143. The NRA's Audit Committee ratified the 2018 Contracting Agreement and Addendum with the good faith belief that both were legitimate agreements for consulting services that the NRA could not obtain elsewhere.

144. The NRA's Audit Committee would not have ratified either the 2018 Contracting Agreement or the Addendum had it known that Ms. Hammer would not provide the NRA with any consulting services and that the purpose of the 2018 Contracting Agreement, and Addendum, was to provide Ms. Hammer with an excess benefit at the expense of the organization.

145. As a direct and proximate result of the above-described fraudulent conduct, the NRA entered into the 2018 Contracting Agreement and Addendum with Ms. Hammer and paid her approximately $1,419,000.00 between January 1, 2018 and April 22, 2024 for consulting services that Ms. Hammer did not provide to the organization.

146.    Ms. Hammer's conduct in misappropriating $1,419,000.00 in funds from the NRA between January 1, 2018 and April 22, 2024 was egregious under the circumstances, especially when considering that Ms. Hammer was a member of the NRA's Board of Directors.

147.    As a decades-long member of the NRA's Board of Directors, Ms. Hammer was a fiduciary of the organization and owed the NRA a duty of loyalty to act in good faith and in the organization's best interests. Ms. Hammer was conscious of her wrongdoing, as evidenced by the fact that she admits in her Complaint that the purpose of the 2018 Contracting Agreement, and the Addendum, was to provide herself with an excess benefit from the NRA and not to provide consulting services to the organization. *See* Compl. ¶¶ 30, 32, 36, and 49.

148.    All of these factors together evidence actual malice and motive to commit wrongdoing to misappropriate the NRA's funds, justifying an award of exemplary and punitive damages, including the NRA's reasonable attorneys' fees and costs incurred, to not only punish Ms. Hammer but deter others from engaging in similar conduct.

WHEREFORE, the NRA respectfully requests that the Court award the following relief:

a.    Enter judgment in the NRA's favor and against Ms. Hammer;

b.    Award the NRA compensatory damages in the approximate amount of $1,419,000.00, or an amount to be determined at trial, plus pre- and post-judgment interest;

c.    Award the NRA punitive damages in an amount to be proven at trial, but in no event less than $100,000.00;

d.    Award the NRA its reasonable attorneys' fees and costs incurred in this litigation; and

55

e.        Award the NRA any such further and additional relief as the nature of the case may

require and which this Honorable Court shall deem just and proper.

## **JURY DEMAND**

The NRA demands a trial by jury on all claims so triable.

Respectfully Submitted,

**JACKSON LEWIS P.C.**

Dated: December 5, 2025        By:    /s/ *Nigel L. Wilkinson*
                                                Jeremy S. Schneider (VSB No. 84419)
                                                Nigel L. Wilkinson (VSB No. 46500)
                                                11790 Sunrise Valley Drive, Suite 400
                                                Reston, Virginia 20191
                                                (703) 483-8300 (Tele.)
                                                (703) 483-8301 (Fax)
                                                jeremy.schneider@jacksonlewis.com
                                                nigel.wilkinson@jacksonlewis.com

                                                *Counsel for Defendant The National Rifle*
                                                *Association of America*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 5, 2025, I electronically filed the foregoing

document with the Clerk of Court using the CM/ECF electronic filing system, which will send a

notification of such filing to the following counsel of record:

John C. Cook, Esq. (VSB No. 38310)
Cook Legal Solutions
3975 University Drive, Suite 360
Fairfax, Virginia 22030
(703) 537-0023 (Tele.)
(571) 520-9836 (Fax)
jcook@cooklegalsolutions.com

*Counsel for Plaintiff Marion P. Hammer*

By:   /s/ *Nigel L. Wilkinson*
      Jeremy S. Schneider (VSB No. 84419)
      JACKSON LEWIS P.C.
      11790 Sunrise Valley Drive, Suite 400
      Reston, Virginia 20191
      (703) 483-8300 (Tele.)
      (703) 483-8301 (Fax)
      jeremy.schneider@jacksonlewis.com

      *Counsel for Defendant The National Rifle
      Association of America*