# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

—————————————————————
MARION P. HAMMER

    Plaintiff,

    v.

NATIONAL RIFLE ASSOCIATION

    Defendant.
—————————————————————

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 1:25-CV-01557-PTG-LRV

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF / COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS COUNTS IV, V, AND VII OF DEFENDANT'S AMENDED COUNTERCLAIMS

Comes now the Plaintiff / Counterclaim Defendant, Marion P. Hammer ("Hammer" or "Counterclaim Defendant") by and through her counsel, and files this Memorandum in Support of her Motion to Dismiss Counts IV, V, and VII of the Amended Counterclaims filed by Defendant National Rifle Association ("NRA" or "Counterclaimant").[1] As grounds therefore, Plaintiff states as follows:

## STATEMENT OF FACTS

Marion Hammer is a former member of the NRA Board of Directors, who served from 1982 through 2022. Def.'s Countercl. ¶ 18. Hammer is a well-recognized Second Amendment advocate. *Id.* ¶ 17. Her accomplishments and unique experiences convinced the NRA to retain her as a consultant beginning in 2004. *Id.* ¶ 26. Between May 2004 and November 2016, Hammer

---

[1] The Court dismissed Count IV (Violation of Business Conspiracy Act), Count V (Virginia Common Law Conspiracy), and Count VII (Fraud in the Inducement). Dkt. 47. NRA filed Amended Counterclaims of those three counts. This motion pertains only to those refiled counts. (Hammer retains her objection to the prior denial of her motion to dismiss the other counterclaims).

1

entered into ten annual consulting agreements with the NRA, and each contract included compensation, scope of work, renewal, and termination terms. *Id.* ¶ 27-28. Under these contracts, Hammer performed services "in the form of advice, analysis, and other duties reasonably assigned by the Executive Vice President of the NRA … including providing information, advice and counsel on legislation, initiative, referenda, election, communications and media matters and other related services as may be requested by the NRA." *Id.* ¶ 29. The Audit Committee approved each of these contracts. *Id.* ¶ 32. Hammer performed properly according to the terms of her contracts from May 2004 to December 2017. *Id.* ¶ 33.

Wayne LaPierre is the former Executive Vice President of the NRA from 1991 to 2024, and he was responsible for directing the affairs of the NRA according to the policies of the Board of Directors. *Id.* ¶ 20-21. LaPierre was close to Hammer during their time at the NRA. *Id.* ¶ 23.

In December 2017, Hammer entered into the next one-year agreement ("2018 Agreement") while she was still a member of the Board of Directors. *Id.* ¶¶ 34, 36. The 2018 Agreement contained similar duties for Hammer as were contained in the prior agreements. *Id.* ¶ 39. The Parties have presented, however, competing versions of the 2018 Agreement. The competing versions are the same in all respects except the NRA's version retained a provision, contained in the prior agreements, which permitted the termination of the Agreement upon 30-days' notice. LaPierre authenticated the NRA's version of the 2018 Agreement, attached to the Counterclaims as Exhibit 11. *Id.* ¶ 38. Hammer asserts that the 30-day notice requirement was removed from the 2018 Agreement. *See* Compl., Ex. A, ECF 1-1 p. 23.

On April 16, 2018, Hammer and LaPierre executed an addendum ("Addendum") to the 2018 Agreement after conducting negotiations, and LaPierre attested to this fact. Def.'s Countercl. ¶¶ 44-46. The Addendum included a compensation increase and term extension from one to ten

2

years. The NRA asserts through testimony that the Addendum continued the 30-day cancellation policy. *Id.* ¶¶ 47-48. Hammer's version of the Addendum (the same document as the NRA's) does not mention a specific 30-day termination option. *See* Compl., Ex. B, ECF 1-1 p. 27.

The NRA alleges that these agreements with Hammer were a related party transaction. Def.'s Countercl. ¶ 37. LaPierre executed the 2018 Agreement on behalf of the NRA before the Audit Committee ratified the contract. *Id.* ¶ 58. LaPierre executed the Addendum on behalf of the NRA before the Audit Committee ratified the agreement. *Id.* ¶ 59. Later the Audit Committee ratified both agreements. *Id.* ¶ 60.

The NRA asserts that the 2018 Agreement and the Addendum's purposes were to fund Hammer's retirement, recognize her past years of service, and assist her transition to private life, but not to pay for any consulting services, thus constituting an excess benefit transaction. *Id.* ¶¶ 55-57. Both LaPierre and Hammer, the NRA alleges, conspired to obtain an excess benefit for Hammer in the form of this contract. *Id.* ¶¶ 62, 64, 66. To accomplish this, the NRA alleges that LaPierre falsely told the audit committee that Hammer would provide services, Hammer provided unique value, her pay increase was justified, and the ten-year term was in the NRA's best interest. *Id.* ¶ 61. The Audit Committee relied on LaPierre's representations when it ratified the agreements, and the Audit Committee would have rejected the agreements had they understood the purpose of the agreement. *Id.* ¶¶ 63-65. The NRA further alleges that Hammer "provided no services of value to the organization," but Hammer received $1,419,000.00 in total payments from January 2018 to April 2024. *Id.* ¶¶ 75-77. The NRA terminated Hammer on April 22, 2024, and she resigned from the Board of Directors in September 2024. *Id.* ¶¶ 50-51.

## STANDARD OF REVIEW

To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough." *Arnett v. Hodges L. Off., PLLC*, No. 3:18CV370, 2019 WL 4195343, at *2 (E.D. Va. Sept. 4, 2019) (citing *Twombly*, 550 U.S. at 555). Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

"A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged." *Arnett*, 2019 WL 4195343, at *3 (citing *Twombly*, 550 U.S. at 556). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted). The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 676-79 (2009).

## ARGUMENT

**I.      NRA's Virginia Business Conspiracy Act Claim (Count IV) Must Be Dismissed for Failure to State a Claim.**

The NRA's business conspiracy claim failed before and must fail again. The Amended Counterclaim still does not allege sufficient concrete factual allegations to support a statutory business conspiracy claim.

A business conspiracy occurs when:

4

any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act.

Va. Code Ann. § 18.2-499 (West). The Virginia Code creates a civil cause of action and allows for the recovery of treble damages. *Id.* § 18.2-500. Legal malice, the first requirement, is established when a person purposefully and illicitly acts to injure another. *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 326 (W.D. Va. 2007). This intent to injure may be one of many purposes for pursuing an action. *Id.* It is not enough to show that the actions of two or more persons caused injury to another person, the persons must have agreed to injure another. *Id.* at 327.

In its initial counterclaim, the NRA alleged that LaPierre and Hammer conspired to injure the NRA by working to obtain an excess benefit for Hammer in the form of the 2018 Agreement and Addendum. Def.'s Countercl. ¶¶ 103-07. That did not work, because in *Schlegal*, the court rejected a reading of the statute that would allow an agreement to harm and malice to be inferred from the fact that a business was injured by the actions of two individuals. *Schlegel*, 505 F. Supp. 2d at 327. The court stated, "two people acting independently would be civilly liable any time their independent acts resulted in a harm to a person's reputation, trade, business or profession, regardless of whether the two people actually came to an agreement." *Id.*

In addition, the facts alleged by the NRA supported the *opposite* notion, that is, that Hammer and LaPierre were *not* working in concert. The NRA provided testimony from LaPierre stating that Hammer did not have a ten-year contract, but a 30-day contract. Def.'s Countercl. ¶ 42. The NRA was adamant that the 30-day termination clause was included in the 2018 Agreement and Addendum. *Id.* ¶ 41, 48. If LaPierre was conspiring with Hammer to provide her with an excess benefit, why would he include in the agreement the means of ending the contract within 30

5

days without cause? The inclusion of such a clause demonstrates that LaPierre was seeking to benefit the NRA on its behalf, not Hammer.

In its Amended Counterclaim, the NRA adds the additional allegations that Hammer and LaPierre "knew at the time they negotiated the terms of the [agreements] …. That Hammer would not provide any consulting services to the organization." Def.'s Am. Countercl., Dkt. 49, ¶ 125.[2] That additional alleged conclusion adds nothing to the factual record. The NRA alleges that this conclusory statement is enough to show a conspiracy to fraudulently induce the NRA to enter into the agreement with Hammer. *Id.* It also alleges this statement supports the allegation that Hammer and LaPierre sought to fraudulently induce the Audit Committee to approve the contract. *Id.* ¶ 126.

In reality, the two new "allegations" in paragraphs 125 and 126 add nothing of value to the analysis. It was certainly implicit in the original counterclaim that Hammer and LaPierre knew what they were doing when they negotiated the agreements. There are a couple obvious "holes" in the NRA's argument. First, the contract did NOT state that Hammer would not perform work, nor did it reserve LaPierre the sole ability to assign work to Hammer. The actual contract language said, "the consultant [Hammer] will perform services … reasonably assigned by the Executive Vice Present [LaPierre] *and Executive Director / ILA* …" Dkt. 38-11 ¶ 1 (emphasis supplied). Even if Hammer and LaPierre did have a secret agreement under which LaPierre would not give Hammer any work to do (which is denied), LaPierre could not and did not promise that the "Executive Director / ILA" would also not give her any work.

---

[2] As to what LaPierre "knew," the NRA appears simply to be guessing. The NRA and LaPierre are hardly on speaking terms. A couple months ago the NRA sued its charitable foundation, run by LaPierre, claiming it was controlled by LaPierre and was illegally diverting NRA assets. *See NRA Sues Charity Arm After Alleged Takeover by LaPierre Allies*, U. S. News, last viewed on February 16, 2026, at NRA Sues Charity Arm After Alleged Takeover by LaPierre Allies. Interestingly, the NRA has not brought LaPierre into the instant case as a defendant, despite its fraud allegations against him.

Second, the NRA has not pleaded any facts to escape the application of the intra-corporate immunity doctrine.

In *Darton Env't, Inc. v. FJUVO Collections, LLC*, the plaintiffs alleged a competing business used its proprietary technology to harm its business. *Darton Env't, Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1026-27 (W.D. Va. 2018). Darton claimed that FJUVO and its employees conspired with each other in violation of the Virginia business conspiracy statute. *Id.* at 1034. The court held Darton's business conspiracy claim failed because of the intracorporate immunity doctrine which states that agents of the same principal cannot conspire with one another because they are part of the same entity. *Id.* at 1035. Essentially, an entity cannot conspire with itself. *Id.* However, the intracorporate immunity doctrine will not apply when an agent acts outside of the scope of their employment. *Id.* at 1035-36.

In this case, the NRA claims that its own agent, LaPierre, was conspiring against the NRA. In short, the NRA is claiming that it was involved in a conspiracy against itself. The NRA does not claim that LaPierre received or sought any individual benefit, nor does the NRA sufficiently allege that LaPierre acted out of the scope of his employment. The NRA does allege that LaPierre was responsible for "presenting contracts and expenditures for ratification to the appropriate committee of the NRA's Board of Directors." Def.'s Am. Countercl. ¶ 159. Although the NRA alleges that LaPierre breached protocol by executing an agreement with Hammer prior to approval, the Audit Committee ratified the agreement. *Id.* ¶ 70-73. By ratifying the agreement, the Audit Committed adopted the contract as its own contract with Hammer. The NRA cannot claim that LaPierre was acting outside of the scope of his employment when his actions were subsequently authorized by his principal, the NRA.

7

II.    **NRA's Virginia Common Law Conspiracy Claim (Count V) Must Be Dismissed for Failure to State a Claim.**

The Amended Counterclaim does not allege sufficient new factual allegations to support its common law conspiracy claim.

A Virginia common law conspiracy claim requires "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007). Further, the existence of an agreement to do harm must be accompanied by an underlying, actionable claim that causes harm. *Id.* Proof that an underlying tort was committed is required. *William v. AES Corp.*, 28 F. Supp. 3d 553, 574–75 (E.D. Va. 2014). Claims based on "conclusory or general allegations" of a conspiracy will not survive a motion to dismiss. *Firestone*, 485 F. Supp. 2d at 703-04.

This common law conspiracy claim falls apart for the same reasons that the statutory business conspiracy claim failed. The original counterclaim alleged that Hammer and LaPierre agreed to provide Hammer with an excess benefit through false statements. Def.'s Countercl. ¶¶ 112-15. As with the statutory conspiracy claim, that was not enough. The Amended Counterclaim simply adds the allegation that Hammer and LaPierre knew that Hammer was not going to do any work under the agreement and leaves unexplained how that affected work that could be assigned by the Executive Director ILA. Def.'s Am. Countercl. ¶ 60. It also does not explain how LaPierre, negotiating for the NRA, could conspire against the NRA, essentially conspiring against himself. And it alleges no value gained by LaPierre or motive for his "fraud."

Without sufficient facts to support a conclusion that Hammer and LaPierre together could cause an unlawful purpose, or cause a lawful purpose through unlawful means, the claim must fail.

8

### III.   NRA's Fraud in the Inducement Claim Must Be Dismissed for Failure to State a Claim.

The elements of fraud in the inducement are "(1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) damages resulting from that reliance." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827–28 (4th Cir. 1999). A party must demonstrate that the reliance on the false statements was "reasonable and justified." *Cars Unlimited II, Inc. v. Nat'l Motor Co.*, 472 F. Supp. 2d 740, 746 (E.D. Va. 2007) (*quoting Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999)). To prove the element of damages, the claimant must demonstrate that reliance on the false representation is what caused the injury. *Id.* at 749–50 (E.D. Va. 2007).

The NRA asserts that Hammer and LaPierre negotiated an agreement that said Hammer would perform work, while intending a reality in which Hammer would not perform work. Essentially, that is all that is pleaded. The documents upon which the NRA rely show that the Executive Director could have given work assignments to Hammer. Dkt. 38-11 ¶ 1. The NRA does not explain why its own official was allegedly negotiating against it, while receiving no benefit for himself. The skeletal allegations in the Amended Counterclaim do not meet the level needed for the heightened pleading required in a fraud claim. *Schlegel*, 505 F. Supp. 2d 321, 329 (W.D. Va. 2007).

## CONCLUSION

WHEREFORE, Counterclaim Defendant Hammer requests that Counts IV, V, and VII of

the Amended Counterclaims be dismissed with prejudice.

Respectfully submitted,

___*/s/ John C. Cook*_____
John C. Cook, Esq. (Bar #38310)
Cook Legal Solutions, PLLC
3975 University Drive, Suite 360
Fairfax, VA 22030
Ph. (703) 537-0023
Fx. (571) 520-9836
jcook@cooklegalsolutions.com
*Counsel for Plaintiff Marion Hammer*


Richard E. Coates, Esq.
COATES LAW FIRM PL
115 East Park Avenue, Unit 1
Tallahassee, FL 32301
rcoates@rcoateslaw.com
*Counsel for Plaintiff*
*(not admitted in Virginia)*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February 2026, I served a copy of the foregoing

Memorandum of Law in Support of Plaintiff/Counterclaim Defendant's Motion to Dismiss

Defendant's Amended Counterclaims upon the following via the CM/ECF system:

Jeremy Steven Schneider
Jackson Lewis P.C. (Reston)
11790 Sunrise Valley Drive
Suite 400
Reston, VA 20191
(T) 703-483-8300
Jeremy.Schneider@jacksonlewis.com
*Attorney for Defendant*

Brian Lee Hayden, Esq.
JACKSON LEWIS PC (Jacksonville)
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
(T) 904-638-2669
(F) 904-638-2656
Brian.hayden@jacksonlewis.com
*Attorney for Defendant (not admitted in Virginia)*

/s/ John C. Cook
John C. Cook

11